UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,

                              Plaintiff,

              -against-

CARTER BROS. AUTOMOTIVE REPAIRS,
INC. a/k/a Carter Brothers Repairs, Inc. and
STEPHEN G. CARTER,

                              Defendants.
------------------------------------------------------------ x

**REPORT AND
RECOMMENDATION**

23 Civ. 4710 (ENV) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff United States of America ("Plaintiff") moves for entry of a default judgment against Defendants Carter Bros. Automotive Repairs, Inc., also known as Carter Brothers Repairs, Inc. ("Carter Brothers"), and Stephen G. Carter ("Mr. Carter" and, collectively with Carter Brothers, "Defendants"). See generally ECF Nos. 16-16-6. For the reasons discussed below, the Court respectfully recommends that Plaintiff's motion be granted with the one amendment to the proposed injunction described below.

## I.    FACTUAL BACKGROUND

Carter Brothers "is a body shop/car repair shop" located in Brooklyn, New York. ECF No. 6 ¶ 3. Mr. "Carter is the president, sole corporate officer, and sole shareholder of Carter Bro[thers]." Id. ¶ 4.

### A.    Employment And Unemployment Taxes

Carter Brothers was required to (1) "[w]ithhold from and account for its employees' wages" both "an estimated amount of federal income tax" and Federal Insurance Contributions Act ("FICA") taxes (the "Employment Taxes"); (2) "[r]eport its [E]mployment [T]axes and file a Form 941 (Employer's Quarterly Federal Tax Return) with the Internal Revenue Service on a

quarterly basis, along with any unpaid [balance of] [E]mployment [T]ax[es] . . . not already deposited on or before the legal due date"; (3) pay the Employment Taxes to the Internal Revenue Service; (4) "[r]eport its [U]nemployment [T]axes and file a Form 940 (Employer's Annual Federal Unemployment Tax Return) with the Internal Revenue Service on an annual basis, along with payment of" the Unemployment Taxes; (5) pay Federal Unemployment Tax Act ("FUTA") taxes (the "Unemployment Taxes") to the Internal Revenue Service; and (6) "[m]ake periodic deposits of its [E]mployment and [U]nemployment [T]axes in an appropriate federal depository bank in accordance with the federal deposit regulations." Id. ¶ 5 (citations omitted).

Carter Brothers has failed to comply with the foregoing obligations "[f]or various tax periods from 2015 to the present . . . and ha[s] engaged in activity known as 'pyramiding,' whereby a business repeatedly withholds taxes from its employees' wages but fails to remit those taxes to the IRS as mandated by law, resulting in an ever-increasing unpaid tax liability." Id. ¶ 6. As of December 25, 2023, Carter Brothers' outstanding obligations in relation to Employment Taxes and Unemployment Taxes, including penalties for late filing and late payment, costs and statutory interest, less any abatements, payments and credits, was $38,418.77. Id. ¶¶ 9, 15; ECF No. 16-2 ¶ 4. Plaintiff provided notice of these outstanding Employment Taxes and Unemployment Taxes to Carter Brothers and demanded payment, see ECF No. 6 ¶ 16, but Carter Brothers has failed to pay, see id. ¶ 17.

The efforts by the Internal Revenue Service to bring Carter Brothers into compliance with its obligations in relation to the Employment Taxes and the Unemployment Taxes, and to collect the overdue Employment Taxes and Unemployment Taxes, have been ongoing "[s]ince at least 2018" and include (1) "[h]aving an IRS employee speak personally, on numerous

occasions, with [Mr.] . . . Carter about Carter Bro[thers]' [E]mployment and [U]nemployment [T]ax obligations"; (2) "[r]ecording 16 Notices of Federal Tax Liens against Carter Bro[thers] between 2017 and 2021"; (3) "[p]roviding Carter Bro[thers] with multiple extensions of time to provide Collection Information Statements, missing tax returns, and proof of federal tax deposits"; (4) "[l]evying on Carter Bro[thers]' bank accounts and accounts receivable; (5) "[a]ssessing trust fund recovery penalties . . . against [Mr.] Carter for multiple quarterly periods, making him personally liable for the employee . . . portion of Carter Bro[thers]' unpaid [E]mployment [T]axes"; (6) "[h]and delivering IRS Letter 903 (notification that a business/taxpayer has not deposited federal [E]mployment [T]axes as required by law) to [Mr.] Carter on May 15, 2018, mailing IRS Letter 903 to [Mr.] Carter on September 30, 2020, and speaking with [Mr.] Carter by telephone on October 8, 2020," thereby "placing Carter Bro[thers] on notice that[,] if it continued to fail to comply with its [E]mployment and [U]nemployment [T]ax obligations, then the IRS may pursue a suit for [a] civil injunction." Id. ¶ 8.

## B.    Income Taxes

As of December 25, 2023, Carter Brothers' outstanding obligations "for corporate income taxes (Form 1120) and civil penalties for noncompliance with Form W-2/W-3 requirements" (the "Income Taxes"), including penalties for late filing and late payment or failure to make estimated payments, costs and statutory interest, less abatements, payments and credits, was $885,699.42. Id. ¶ 18; ECF No. 16-2 ¶ 5. Plaintiff provided notice of these outstanding Income Taxes to Carter Brothers and demanded payment, see ECF No. 6 ¶ 19, but Carter Brothers failed to pay, see id. ¶ 20.

### C.    Trust Fund Recovery Penalties

Mr. Carter signed the income tax returns for Carter Brothers, at least for 2010 through 2017 and 2020 through 2021.  See ECF No. 6 ¶ 21.  Mr. Carter is "a person responsible for collecting, truthfully accounting for, and paying over to the Internal Revenue Service . . . the trust fund portion of federal income and FICA taxes withheld from the wages of the employees of Carter Bro[thers]" but willfully failed to do so for the foregoing time periods.  Id. ¶ 24.  As of December 25, 2023, "[a] delegate of the Secretary of the Treasury of the United States of America made assessments against" Mr. Carter for $16,280.35 (the "Trust Fund Recovery Penalties").  See id.; ECF No. 16-2 ¶ 6.  A delegate of the Secretary of the Treasury of the United States of America provided notice of these outstanding Trust Fund Recovery Penalties to Mr. Carter and demanded payment, see ECF No. 6 ¶ 25, but Mr. Carter failed to pay, see id. ¶ 26.

## II.    DISCUSSION

Federal Rule of Civil Procedure 55 sets forth the two-step procedure "for the entry of judgment against a party who fails to defend: first the entry of a default, and second, the entry of a default judgment."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011 (citation omitted).

### A.    Entry Of A Default

Federal Rule of Civil Procedure 55(a), entitled "Entering a Default," provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Local Civil Rule 55.1(a)[1] requires a party seeking an entry of default to file (1)

---

[1] Although the entries of default were requested and the present motion was filed prior to the implementation of amendments to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York on July 1, 2024, the Court applies the current Local

4

a request for an entry of default in the form prescribed by the Clerk of Court, (2) an affidavit demonstrating that the applicable requirements for service or a waiver of service have been satisfied and "that the party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," (3) a proposed form of default in the form prescribed by the Clerk of Court, and (4) "a certificate of service showing that the foregoing documents have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default is sought" and, if the latter, and "[i]f the mailing is returned, a supplemental certificate . . . setting forth that fact, together with the reason provided for the return, if any." Local Civ. R. 55.1(a). This first step "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." Mickalis Pawn Shop, 645 F.3d at 128.

### 1. First And Third Requirements Of Local Civil Rule 55.1(a)

Plaintiff satisfied the first and third requirements of Local Civil Rule 55.1(a) as to the form of the request for entries of default. Plaintiff filed a request for entries of default as to Defendants containing the request for entries of default, an accompanying declaration, a proposed form of default, and certificates of service. See generally ECF Nos. 9-9-2.

### 2. Second Requirement Of Local Civil Rule 55.1(a)

Plaintiff satisfied the second requirement of Local Civil Rule 55.1(a) as to the demonstration that Defendants were properly served with process and failed to appear.

Federal Rule of Civil Procedure 4(c) requires that the summons and complaint be served on the defendants within 90 days after the filing of the complaint, in accordance with Federal

---

Civil Rules to the present motion. See Local Civ. R. 1.1 (stating that the current Local Civil Rules "govern actions pending or filed on or after" July 1, 2024).

Rule of Civil Procedure 4(m). Federal Rule of Civil Procedure 4(e), entitled "Serving an Individual Within a Judicial District of the United States," provides that

> an individual . . . may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Federal Rule of Civil Procedure 4(h), entitled "Serving a Corporation, Partnership, or Association," provides that

> a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: (1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h).

Plaintiff commenced this action by filing a complaint on June 23, 2023, see generally ECF No. 1; see also ECF No. 9-1 ¶ 3, which was followed by Plaintiff's filing of an amended complaint shortly thereafter on July 5, 2023, see generally ECF No. 6; see also ECF No. 9-1 ¶ 4. On August 30, 2023, Plaintiff served Mr. Carter with the summons and amended complaint, see generally ECF No. 7, satisfying both the temporal requirement for service set forth in Federal Rule of Civil Procedure 4(c), namely that the summons and complaint be served on a defendant within 90 days after filing a complaint, and the substantive service requirement set forth in Federal Rule of Civil Procedure 4(e), namely by serving Mr. Carter with the summons and amended complaint personally, in accordance with Federal Rule of Civil Procedure 4(e)(2)(A).

6

See ECF No. 9-1 ¶ 5.  On August 30, 2023, Plaintiff served Carter Brothers with the summons and amended complaint, see generally ECF No. 8, satisfying both the temporal requirement for service set forth in Federal Rule of Civil Procedure 4(c), namely that the summons and complaint be served on a defendant within 90 days after filing a complaint, and the substantive service requirement set forth in Federal Rule of Civil Procedure 4(h)(1)(B), namely by serving Mr. Carter with the summons and amended complaint personally, in his capacity as "[o]wner" of Carter Brothers.[2]  See ECF No. 9-1 ¶ 5.  As such, as explained in Plaintiff's declaration in support of its request for entries of default as to Defendants, Defendants were required to answer or otherwise respond to the amended complaint by September 20, 2023, but they failed to do so. See id. ¶¶ 7-8.

### 3. Fourth Requirement Of Local Civil Rule 55.1(a)

Plaintiff has satisfied the fourth requirement of Local Civil Rule 55.1(a) as to service of the request for entries of default.

Plaintiff's request for entries of default initially had three issues in relation to service. First, Plaintiff's filing contained a certificate of service of the request for entries of default, see ECF No. 9 at 3, and for Plaintiff's declaration, see ECF No. 9-1 at 3, but it did not contain a certificate of service for the proposed form of order.  Second, both certificates of service indicated that copies of both the request for entries of default and Plaintiff's declaration were sent to Mr. Carter at 2310 Atlantic Avenue, Brooklyn, NY 11223, which appears to be the business address for Carter Brothers, see ECF No. 6 ¶ 3 (noting that the "principal place of business" for Carter Brothers, which "is a body shop/car repair shop," is "2310 Atlantic Ave., #

---

[2] The Court notes that, as to Mr. Carter's role in relation to Carter Brothers, the amended complaint further states that Mr. "Carter is the president, sole corporate officer, and sole shareholder of Carter Bro[thers]."  ECF No. 6 ¶ 4.

12, Brooklyn, New York 11233"), as opposed to Mr. Carter's residential address, where service was required for Mr. Carter. Third, as to the address for Carter Brothers, while the amended complaint reflects that its address contains a unit number, namely 12, <u>see</u> <u>id.</u>, the certificates of service did not contain such unit number in the address at which Carter Brothers was served, <u>see</u> ECF No. 9 at 3; ECF No. 9-1 at 3.

Plaintiff has corrected the three deficiencies discussed above. On September 2, 2024, the Court directed Plaintiff to correct service deficiencies in relation to Plaintiff's motion for default judgment, also discussed below, <u>see</u> <u>supra</u>, Sec. II(B)(1)(b)(iii), which are identical to the latter two deficiencies discussed above in relation to the request for entries of default, namely the failure to serve Mr. Carter at a residential address and the failure to include the unit number at the address for service on the Carter Brothers. <u>See</u> 9/2/2024. The Court also directed Plaintiff to file proof of service of such corrections by September 6, 2024. <u>See</u> <u>id.</u> Plaintiff complied and filed such proof of service on September 6, 2024. <u>See</u> ECF Nos. 19-19-1. Because Plaintiff has done so, and because doing so placed Defendants on notice of the prior entries of default and of the pending motion for default judgment, Plaintiff has effectively corrected the latter two deficiencies discussed above. Plaintiff has also effectively corrected the first deficiency discussed above, namely the failure to file proof of service of the proposed form of order in support of its request for entries of default, given that, in serving the motion for default judgment on Defendants, Plaintiff served the entries of default themselves on Defendants. <u>See generally</u> ECF No. 16-4.

**B.      Entry Of A Default Judgment**

The Court first addresses the procedural requirements for entry of a default judgment then addresses the substantive requirements for entry of a default judgment.

### 1.    Procedural Requirements

The Court first recites the applicable law pertaining to the procedural requirements then applies it to the present motion.

### a.    Applicable Law

Federal Rule of Civil Procedure 55(b), entitled "Entering a Default Judgment," provides two mechanisms through which a default judgment may be entered: by the clerk of court, pursuant to subsection (1), or by the court, pursuant to subsection (2).  In either instance, Local Civil Rule 55.2(a) requires a party moving for entry of a default judgment to file (1) an affidavit demonstrating (a) that the Clerk of Court has entered default pursuant to Local Civil Rule 55.1, (b) that the moving party has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521, and (c) that "the party against whom judgment is sought is not known to be a minor or an incompetent person, or, if seeking default judgment by the court, the minor or incompetent person is represented by a general guardian, conservator, or other fiduciary who has appeared"; (2) the moving papers required by Local Civil Rule 7.1, including a memorandum of law and a proposed order and judgment; and (3)

> a certificate of service stating that all documents in support of the request for default judgment, including the 'Clerk's Certificate of Default' and any papers required by this [R]ule, have been personal served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought

and, if the latter, and "[i]f the mailing is returned, a supplemental certificate of service. . . setting forth that fact, together with the reason provided for the return, if any."  Local Civ. R. 55.2(a).

Subsection (1), entitled "By the Clerk," provides that,

> [i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant

who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1).  Local Civil Rule 55.2(b) additionally requires that requests for default judgments to be entered by the Clerk of Court be accompanied by "an affidavit or declaration from someone with personal knowledge showing the principal amount due and owing, not exceeding the amount sought in the claim to which no response has been made, plus interest, if any, computed by the party, with credit for all payments received to date clearly set forth, and costs, if any, under 28 U.S.C. § 1920."  Local Civ. R. 55.2(b).  Local Civil Rule 55.2(b) precludes the Clerk of Court from entering a default judgment (1) against a minor or incompetent person or (2) if attorneys' fees or other substantive relief is sought, in addition to payment of a sum certain or a sum that can be made certain by computation.  See id.[3]

Subsection (2), entitled "By the Court," provides that, "[i]n all other cases, the party must apply to the court for a default judgment."  Fed R. Civ P. 55(b)(2).  Local Civil Rule 55.2(c) requires that such motion be accompanied by "a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs."  Local Civ. R. 55.2(c).

### b.    Application

The Court discusses each of the four applicable procedural requirements in turn.

### i.    First Requirement Of Local Civil Rule 55.2(a)

Plaintiff satisfied the first requirement of Local Civil Rule 55.2(a), as to the filing of an affidavit providing requisite information.  Plaintiff filed a declaration, under penalty of perjury,

---

[3] Here, given that Plaintiff seeks entry of an injunction, the Clerk of Court is without authority to address the request for an entry of default judgment.

stating that Mr. Carter is not a member of the military, as revealed by "[a] search of the Department of Defense manpower Data Center database," and that Mr. Carter is neither a minor nor an incompetent person. ECF No. 16-3 ¶¶ 5-6. Although not noted in Plaintiff's declaration, Plaintiff's declaration is followed by a copy of the certificate of default entered in this action as to Defendants. <u>See generally</u> ECF No. 16-4.

### ii.     Second Requirement Of Local Civil Rule 55.2(a)

Plaintiff satisfied the second requirement of Local Civil Rule 55.2(a), as to compliance with Local Civil Rule 7.1 and inclusion of a proposed order and judgment. Local Civil Rule 7.1 requires that motions include "(1) [a] notice of motion . . . that specifies the rules or statutes under which the motion is brought and the relief is sought"; "(2) [a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined"; and "(3) [s]upporting affidavits and exhibits thereto containing any factual information and parts of the record necessary for the decision of the motion." Plaintiff's motion contains a compliant notice of motion, <u>see generally</u> ECF No. 16; a compliant memorandum of law, <u>see generally</u> ECF No. 16-1; supporting declarations, <u>see generally</u> ECF Nos. 16-2 & 16-3, and copies of the certificate of default entered in this action as to Defendants, <u>see generally</u> ECF No. 16-4, and the amended complaint filed in this action, <u>see generally</u> ECF No. 16-5; and a proposed final judgment and injunction, <u>see generally</u> ECF No. 16.

### iii.    Third Requirement Of Local Civil Rule 55.2(a)

Plaintiff has satisfied the third requirement of Local Civil Rule 55.2(a), as to service of the motion for entry of a default judgment.

Plaintiff's motion for default judgment initially had two issues in relation to service. Plaintiff's filing contained certificates of service following the notice of motion and following the memorandum of law, certifying that "the foregoing and all exhibits and attachments" were sent via mail to Mr. Carter and to Carter Brothers at 2310 Atlantic Avenue, Brooklyn, NY 11233. ECF No. 16 at 5; ECF No. 16-1 at 18. The first issue with the certificates was that they indicated that a copy of the motion was sent to Mr. Carter at 2310 Atlantic Avenue, Brooklyn, NY 11223, which appears to be the business address for Carter Brothers, see ECF No. 6 ¶ 3 (noting that the "principal place of business" for Carter Brothers, which "is a body shop/car repair shop," is "2310 Atlantic Ave., # 12, Brooklyn, New York 11233"), as opposed to Mr. Carter's residential address, where service was required. The second issue with the certificates was that, as to the address for Carter Brothers, while the amended complaint reflects that its address contains a unit number, namely 12, see id., the certificates of service did not contain such unit number in the address at which Carter Brothers was served, see ECF No. 16 at 5; ECF No. 16-1 at 18.

Plaintiff has corrected the two deficiencies discussed above. On September 2, 2024, the Court directed Plaintiff to correct the above deficiencies, namely the failure to serve Mr. Carter at a residential address and the failure to include the unit number at the address for service on the Carter Brothers. See 9/2/2024. The Court also directed Plaintiff to file proof of service of such corrections by September 6, 2024. See id. Plaintiff complied and filed such proof of service on September 6, 2024. See ECF Nos. 19-19-1. Because Plaintiff has done so, Plaintiff has satisfied the third requirement of Local Civil Rule 55.2(a).

###### iv.    Fourth Requirement Of Local Civil Rule 55.2(c)

Plaintiff has satisfied the fourth requirement of Local Civil Rule 55.2(c), as to inclusion of a statement of damages and the basis for each element of damages from a person with personal knowledge of such damages. Plaintiff's motion includes the declaration of Alex Lau, a revenue officer/advisor with the Internal Revenue Service who, at the request of the U.S. Department of Justice, regularly reviews Internal Revenue Service relating to specific taxpayers and determines the balance due. See ECF No. 16-2 ¶ 1. Officer Lau did so here as to Defendants and provided the basis for the damages calculations. See generally ECF No. 16-2.

### 2.    Substantive Requirements

Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)," which, in turn, instructs "that [a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Mickalis Pawn Shop, 645 F.3d at 128, 128 n.16 (citation & quotations omitted). A district court's discretion to proceed pursuant to this procedure is "circumscribed," given the "strong preference for resolving disputes on the merits" and given that "a default judgment is the most severe sanction which the court may apply." Id. at 129 (citations & quotations omitted). As such, before entering a default judgment, a "district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." Mickalis Pawn Ship, LLC, 645 F.3d at 137 (footnote, citation, & quotations omitted).[4] The Court addresses the merits

---

[4] In its memorandum of law, Plaintiff recites three factors for determining whether entry of a default judgment is appropriate: (1) "whether the defendant's default was willful," (2) "whether the defendant has a meritorious defense," and (3) "the level of prejudice to the non-defaulting party if the motion is denied." ECF No. 16-1 at 4 (citation & quotations omitted). These factors mirror those that the Second Circuit has "established . . . must be assessed in order to decide

of each of Plaintiff's claims below, accepting all allegations in Plaintiff's amended complaint as true.  See Mirlis v. Greer, 80 F.4thh 377, 383 (2d Cir. 2023) (stating that, "[o]n a motion for default judgment after default has entered, a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor" (citation & quotations omitted)); A&B Alternative Marketing Inc. v. Int'l Quality Fruit Inc., 35 F.4th 913, 916 (2d Cir. 2022) (noting that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability" (citation & quotations omitted)).

### a.    Count I For An Injunction Against Defendants

26 U.S.C. § 7402(a) provides "[t]he district courts of the United States at the instance of the United States . . . [with] jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  District courts addressing motions for entry of a

---

whether to relieve a party from default or from a default judgment," which are "(1) the willfulness of the default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  Bricklayers and Allied Craftworkers Local 2, Albany, NY Pension Fund v. Moulton Masonry & Construction, LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citations & quotations omitted).  The Court recognizes that the district courts in the Second Circuit often consider these factors in deciding whether to grant a motion for entry of a default judgment, see, e.g., Mulligan Funding LLC v. Tommy Interior Contracting Corp., No. 23 Civ. 8808 (RER) (JAM), 2024 WL 3513456, at *1, *4 (E.D.N.Y. July 23, 2024) (adopting a report and recommendation on a motion for default judgment, which noted that "[c]ourts have significant discretion in granting default judgments and consider the following factors: (1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment (citations & quotations omitted)), in addition to the merits of a plaintiff's claims, and therefore addresses them briefly here.

First, in view of proper service on Defendants, see supra, Sec. II(A)(2), Defendants' default appears to have been willful.  Second, the Court is unable to assess whether Defendants have meritorious defenses because they have failed to appear.  Third, Plaintiff would be prejudiced if the Court were to deny its motion, as pursuing relief in this forum is its civil remedy for redressing Defendants' outstanding tax liabilities and continued non-compliance with applicable laws.

default judgment and entry of a permanent injunction pursuant to 26 U.S.C. § 7402(a) regularly enter such injunctions, which contain "follow the law" and reporting provisions, where a taxpayer has engaged in "pyramiding." See, e.g., U.S. v. Wichita Falls Plumbing, No. 7:22 Civ. 6 (O) (BP), 2022 WL 5264509, at *4-5 (N.D. Tex. Sept. 15, 2022) (considering the plaintiff's motion for entry of a default judgment, in the form of a permanent injunction, pursuant to 26 U.S.C. § 7402(a) and reasoning that entry of such an injunction was warranted, in view of the entity defendant's "continual[] and repeated[] withh[olding of] tax payments from its employees and fail[ure] to remit those withheld payments to the IRS," particularly in view of the efforts by "the IRS [to] repeatedly contact [the individual defendant] . . . to attempt to solve the problem" (citations omitted)), report & recommendation adopted, No. 7:22 Civ. 6 (O) (BP), 2022 WL 5250298 (N.D. Tex. Oct. 6, 2022); U.S. v. Jamestown Daycare Ctr., Inc., No. 7:21 Civ. 157 (LWF), 2022 WL 1216303, at *1-2 (E.D.N.C. Mar. 30, 2022) (considering the plaintiff's motion for entry of a default judgment, in the form of a permanent injunction, pursuant to 26 U.S.C. § 7402(a); reciting the "significant resources" expended by the Internal Revenue Service to bring the defendant into compliance with the applicable laws; and finding that, absent an injunction, the defendant "is likely to continue its pattern of interference with the internal revenue laws that has already led to the nonpayment of over $159,000 in outstanding tax liabilities," such that "[a]n injunction compelling compliance with federal tax withholding laws [wa]s necessary"); U.S. v. Marsden, No. 3:20 Civ. 82 (SMR) (HCA), 2021 WL 6804105, at *1-3 (S.D. Iowa Sept. 1, 2021) (considering the plaintiff's motion for entry of a default judgment and entry of a permanent injunction pursuant to 26 U.S.C. § 7402(a)), noting that "[t]he IRS ha[d] contacted [the d]efendant repeatedly to try to bring her business into compliance with the Internal Revenue Code, noting that the "[d]efendant had previously agreed to an installment plan with the IRS but

[that] the agency terminated the agreement because she did not adhere to the terms," and concluding that the defendant's "long history of failure to file federal tax returns and pay the related tax liabilities" and the plaintiff's inability "to compel compliance with the tax laws" warranted the entry of a permanent injunction). See generally U.S. v. Master Fire Protection, Inc., No. 3:16 Civ. 8755 (MAS) (DEA), 2018 WL 4378159 (D.N.J. Aug. 23, 2018); U.S. v. Bailey Family Chiropractic, No. 2:18 Civ. 515 (CRE), 2018 WL 4271449 (W.D. Pa. Aug. 21, 2018); U.S. v. W. Potomac Fire & Rescue, Inc., No. 17 Civ. 1004 (RDB), 2018 WL 3804182 (D. Md. July 9, 2018); U.S. v. Machperson-Towne Co., No. 17 Civ. 1802 (DWF) (TNL), 2017 WL 5054699 (D. Minn. Nov. 3, 2017); U.S. v. Rivera-Rivera, No. 3:16 Civ. 2160 (DRD), 2016 WL 7868753 (D.P.R. Dec. 6, 2016); U.S. v. J.A. Subway, Inc., No. 1:16 Civ. 810, 2016 WL 6988800 (D. Md. Sept. 23, 2016); U.S. v. Bestcare Nursing and Res. Servs., Inc., No. 1:16 Civ. 899 (JFM), 2016 WL 6998774 (D. Md. Aug. 4, 2016); U.S. v. U.S. Contracting, LLC, No. 1:15 Civ. 1536 (WCG), 2016 WL 6995368 (E.D. Wis. Aug. 4, 2016); U.S. v. Live Spark, Inc., No. 14 Civ. 112 (RHK) (SER), 2014 WL 5139331 (D. Minn. Sept. 19, 2014); U.S. v. David D. Patton & Assocs., No. 2:12 Civ. 10583, 2012 WL 5389325 (E.D. Mich. Nov. 1, 2012); U.S. v. China China Inc., No. 11 Civ. 2065 (EDL), 2011 WL 4404941, at *3-5, *7 (N.D. Cal Aug, 31, 2011); report & recommendation adopted, No. 11 Civ. 2065 (SC), 2011 WL 4404154 (N.D. Cal. Sept. 21, 2011); United States v. Diversified T.E.S.T. Tech., Inc., No. 5:09 Civ. 718 (FJS) (DEP), 2010 WL 3761866, at *1, *5, *7 (N.D.N.Y. Sept. 20, 2010). [5]

---

[5] Cf. United States v. Olson, No. 1:21 Civ. 435 (HAB), 2023 WL 2455973, at *1-2, *4 (N.D. Ind. Mar. 9, 2023) (in addressing the plaintiff's motion to alter or amend a judgment, which was essentially a motion for reconsideration as to the aspect of the motion pertaining to the prior denial of entry of a permanent injunction pursuant to 26 U.S.C. § 7402(a), declining to "read [Section] 7402 as allowing the IRS to deputize the federal courts into its enforcement arm every time a taxpayer is delinquent," given that "[t]o do so would be a waste of this [c]ourt's valuable time and resources"), reversed, 98 F.4th 840 (7th Cir. 2024).

Carter Brothers was required to, as to the Employment Taxes, withhold the Employment Taxes from its employees, report its Employment Taxes to the Internal Revenue Service on a quarterly basis, and pay the Employment Taxes to the Internal Revenue Service; as to the Unemployment Taxes, report its Unemployment Taxes to the Internal Revenue Service on an annual basis and pay the Unemployment Taxes to the Internal Revenue Service; and, as to both, make periodic deposits of its Employment Taxes and its Unemployment Taxes.  See ECF No. 6 ¶ 5 (citations omitted).  Carter Brothers consistently failed to comply with these obligations since 2015, and it engaged in pyramiding, through which it withheld the Employment Taxes from its employees' wages but failed to remit the Employment Taxes to the Internal Revenue Service, resulting in increasing outstanding liability over time.  See id. ¶ 6.  Plaintiff provided notice of these outstanding Employment Taxes and Unemployment Taxes to Carter Brothers and demanded payment, see id. ¶ 16, but Carter Brothers failed to make payment, see id. ¶ 17.  The Internal Revenue Service engaged in various efforts to obtain Carter Brothers' compliance since at least 2018, to no avail, including speaking with Mr. Carter personally on numerous occasions, recording notices of federal tax liens against Carter Brothers, providing extensions of time to Carter Brothers, levying on Carter Brothers' accounts, assessing the Trust Fund Recovery Penalties against Mr. Carter, and hand-delivering and mailing to Mr. Carter notices of failure to deposit the Employment Taxes as required.  See id. ¶ 8.

In view of Carter Brothers' history of non-compliance with its obligations as to the Employment Taxes and the Unemployment Taxes and the significant, but unsuccessful, efforts undertaken by Plaintiff to obtain compliance over the course of many years, the Court finds that entry of a permanent injunction is necessary and appropriate for the enforcement of the internal revenue laws.  The Court finds the terms of the proposed injunction, see generally, ECF No. 16-

6, to be appropriate, with the exception of paragraph 13(b), which the Court does not recommend be included in a final injunction. The Court also does not recommend inclusion of the related phrase "or if, after the third notification followed by cures, the United States becomes aware of a new violation by Carter Bros. Automotive Repairs, Inc., also known as Carter Brothers Repairs, Inc., or Stephen G. Carter" in paragraph 13(c). Its inclusion would excuse Plaintiff of its obligation to notify Defendants of a violation of the injunction and request a cure where Plaintiff previously sent such notifications and requests for three prior separate violations. Plaintiff has not offered a justification to excuse it from notifying Defendants of each violation of the injunction and requesting a cure. Without such notice, Defendants may be unaware of a new violation they may have committed. It would be a violation of basic principles of due process to allow Plaintiff to pursue violation of the Order without providing notice.

### b. Count II To Reduce Unpaid Employment Taxes And Unemployment Taxes To Judgment Against Carter Brothers

As of December 25, 2023, Carter Brothers' outstanding obligations in relation to Employment Taxes and Unemployment Taxes, including penalties for late filing and late payment, costs, and statutory interest, less any abatements, payments, and credits, was $38,418.77. ECF No. 6 ¶¶ 9, 15; ECF No. 16-2 ¶ 4. Plaintiff provided notice of these outstanding Employment Taxes and Unemployment Taxes to Carter Brothers and demanded payment, see id. ¶ 16, but Carter Brothers failed to pay any amount, see id. ¶ 17. The declaration of Alex Lau, a revenue officer/advisor with the Internal Revenue Service, sets forth each assessment of and in relation to the Employment Taxes and the Unemployment Taxes. See ECF No. 16-2 ¶¶ 1, 4. A federal tax assessment is "presumed to be correct and constitute[s] prima facie evidence of liability," and "[t]he taxpayer bears the burden to prove that the assessment was incorrect." In re WorldCom, Inc., 723 F.3d 346, 352 (2d Cir. 2013) (citations omitted). Carter

Brothers failed to challenge the propriety of the tax assessments, and, as such, the tax assessments are prima facie evidence of liability. The Court respectfully recommends the entry of a default judgment as to Carter Brothers' Employment Taxes and Unemployment Taxes in the amount of $38,418.77.

### c.  Count III To Reduce Unpaid Income Taxes To Judgment Against Carter Brothers

As of December 25, 2023, Carter Brothers' outstanding obligations the Income Taxes, including penalties for late filing and late payment or failure to make estimated payments, costs and statutory interest, less abatements, payments and credits, was $885,699.42. ECF No. 6 ¶ 18; ECF No. 16-2 ¶ 5. Plaintiff provided notice of these outstanding Income Taxes to Carter Brothers and demanded payment, see id. ¶ 19, but Carter Brothers failed to pay any amount, see id. ¶ 20. The declaration of Alex Lau, a revenue officer/advisor with the Internal Revenue Service, sets forth each assessment of and in relation to the Income Taxes. See ECF No. 16-2 ¶¶ 1, 5. A federal tax assessment is "presumed to be correct and constitute[s] prima facie evidence of liability," and "[t]he taxpayer bears the burden to prove that the assessment was incorrect." In re WorldCom, Inc., 723 F.3d 346, 352 (2d Cir. 2013) (citations omitted). Carter Brothers failed to challenge the propriety of the tax assessments, and, as such, the tax assessments are prima facie evidence of liability. The Court respectfully recommends the entry of a default judgment as to Carter Brothers' Income Taxes in the amount of $885,699.42.

### d.  Count IV To Reduce Unpaid Trust Fund Recovery Penalties To Judgment Against Mr. Carter

Mr. Carter signed the income tax returns for Carter Brothers, at least for 2010 through 2017 and 2020 through 2021. See ECF No. 6 ¶ 21. Mr. Carter is "a person responsible for collecting, truthfully accounting for, and paying over to the Internal Revenue Service . . . the

trust fund portion of federal income and FICA taxes withheld from the wages of the employees of Carter Bro[thers]" but willfully failed to do so for the foregoing time periods. Id. ¶ 24. As of June 9, 2023, "[a] delegate of the Secretary of the Treasury of the United States of America made assessments against" Mr. Carter, the Trust Fund Recovery Penalties, for $16,280.35. See id.; ECF No. 16-2 ¶ 6. A delegate of the Secretary of the Treasury of the United States of America provided notice of these outstanding Trust Fund Recovery Penalties to Mr. Carter and demanded payment, see id. ¶ 25, but Mr. Carter failed to pay, see id. ¶ 26. The declaration of Alex Lau, a revenue officer/advisor with the Internal Revenue Service, sets forth each assessment of and in relation to the Trust Fund Recovery Penalties. See ECF No. 16-2 ¶¶ 1, 6. A federal tax assessment is "presumed to be correct and constitute[s] prima facie evidence of liability," and "[t]he taxpayer bears the burden to prove that the assessment was incorrect." In re WorldCom, Inc., 723 F.3d 346, 352 (2d Cir. 2013) (citations omitted). Mr. Carter failed to challenge the propriety of the tax assessments, and, as such, the tax assessments are prima facie evidence of liability. The Court respectfully recommends the entry of a default judgment as to Mr. Carter's Unpaid Trust Fund Recovery Penalties in the amount of $16,280.35.

## III.    CONCLUSION

For the reasons discussed above, the Court respectfully recommends that Plaintiff's motion be granted with the amendment to the proposed injunction described above. As to the amount of the judgment, the Court respectfully recommends that the Court enter judgment against Carter Brothers for $38,418.77, plus statutory additions and interest accruing since December 25, 2023, for Count II; against Carter Brothers for $885,699.42, plus statutory additions and interest accruing since December 25, 2023, for Count III; and against Mr. Carter for $16,280.35, plus statutory additions and interest accruing since December 25, 2023, for

Count IV.  The text of the proposed final judgment and injunction, as modified, is attached to this report and recommendation.

## IV.    OBJECTIONS

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation by both the District Court and the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision" (citation & quotations omitted)).

The Court will mail a copy of this report and recommendation and the docket to Carter Bros. Automative Repairs, Inc. at 2310 Atlantic Avenue, # 12, Brooklyn, NY 11233, and at 2310-12 Atlantic Avenue, Brooklyn, NY 11233.  The Court will mail a copy of this report and recommendation and the docket to Stephen G. Carter at 2310 Atlantic Avenue, Brooklyn NY 11233; 679 East 98th Street, Apartment 1, Brooklyn, NY 11236; 7267 Royce Place, Brooklyn, NY 11234; and 320 NW 190th Street, Miami, FL 33169.

Dated: Brooklyn, New York
      September 10, 2024

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge